J-S54013-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERNEST HAMILTON PYLE | : | |
| | : | |
| Appellant | : | No. 1761 WDA 2017 |

Appeal from the Judgment of Sentence May 2, 2017
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s):  CP-03-CR-0000784-2016

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY PANELLA, J.                    FILED NOVEMBER 26, 2018

A jury found Ernest Pyle guilty of intimidating a witness based on charges he threatened Gregory McClafferty in an attempt to dissuade McClafferty from testifying against Pyle's son at a preliminary hearing. Pyle contends the evidence at trial was insufficient to support his conviction.[1] We affirm.

_____

[1] Pyle's appellate counsel did not comply with the trial court's order requiring a statement of issues to be raised on appeal. After the trial court noted this failure in its opinion, counsel requested a remand under Pa.R.A.P. 1925(c)(3) to permit him to file a nunc pro tunc statement. We remanded the case, but counsel did not file a timely statement. The trial court once again penned an opinion noting the absence of the statement. Counsel subsequently filed an untimely statement, and the trial court filed an updated opinion addressing the issue raised.

Pyle's challenge to the sufficiency of the evidence raises a pure question of law. See Commonwealth v. Jacoby, 170 A.3d 1065, 1076 (Pa. 2017). We review the claim de novo, and review the entire record before us. See id.

We examine whether the evidence admitted at trial is capable of supporting a finding on every element of the offense at issue. See Commonwealth v. Doughty, 126 A.3d 951, 958 (Pa. 2015). In doing so, we view the evidence in the light most favorable to the verdict winner, drawing all reasonable inferences from it. See id. The Commonwealth's burden may be met solely through circumstantial evidence. See id. The finder of fact is entitled to believe all, some, or none of the evidence presented. See Commonwealth v. Diggs, 949 A.2d 873, 877 (Pa. 2008).

Pyle was charged with intimidating a witness, McClafferty, in an effort to get McClafferty to not appear at a preliminary hearing for Pyle's son, Rick. To support this allegation, the Commonwealth was required to prove that Pyle: (a) sought to intimidate McClafferty with (b) the knowledge or intent that his actions would interfere with the administration of criminal justice by (c) causing McClafferty not to testify at a preliminary hearing. See 18 Pa.C.S.A. § 4952(a)(1).

_____

We decline to find Pyle's issue waived under these circumstances. See Commonwealth v. Brown, 145 A.3d 184, 186 (Pa. Super. 2016) (exercising discretion to review claims waived by untimely 1925(b) statement when trial court has appropriately addressed the claims in its opinion).

Thus, as part of its case, the Commonwealth was required to establish the existence of an underlying criminal prosecution in which McClafferty would testify. McClafferty described the underlying crime at this trial:

It was 2:30 in the morning Father's Day night. I was in bed sleeping. I heard a loud vehicle pull into the driveway. I went to look out and I seen [sic] a shadow, somebody entering onto my porch.

As I went to go to the door to turn on the light, the door kicked open and smacked me in the eye, in the head, and it was [Pyle's son, Rick] trying to break in the door. He actually did kick the door open. Like I said, it smacked me in the forehead. By the time I got to the light and everything turned on, I recognized who it was … [a]nd he kept trying to kick in the door and my kitchen table is pretty close to the back door, so I actually reached over and grabbed a kitchen chair and jammed the door shut against the wall and I climbed on the top of the chair. I was involved in a bad motorcycle accident. My right leg is paralyzed from the knee down.

[Rick] knew me because we worked on a couple jobs together and I supposedly told his boss that we did the job with that he was on heroin and so he lost his job, and that was the main reason that he come [sic] to my house and he wanted to rob me and beat me up.

N.T., Jury Trial, 3/9/17, at 29.

Shortly before he was to testify at Rick's preliminary hearing, Pyle and his brother, George, pulled into McClafferty's driveway. See id., at 30. Pyle walked up to McClafferty's door and asked to see what damage his son had done. See id., at 31. Pyle pushed his way into the house, claiming he wanted to see the damage from the inside. See id. McClafferty did not challenge Pyle, but asked him to leave once he had seen the door from the inside. See id.

Pyle walked back out to the porch and asked McClafferty if he intended to appear at the preliminary hearing. See id. McClafferty, fearing that violence was imminent, answered that he did not have to. See id. Pyle asked if there was anything he could do to keep McClafferty from testifying. See id. Pyle offered to replace McClafferty's door. See id., at 32.

McClafferty declined the offer, noting he would purchase a new door with the money he would receive through restitution. See id. Pyle again asked if there was anything he could do to dissuade McClafferty from testifying. See id. Still in fear, McClafferty lied and told Pyle the prosecution did not need his testimony, as the State Police had assumed control of the case. See id.

This statement enraged Pyle. See id. As he was leaving the porch, Pyle turned to McClafferty and stated that McClafferty was "going to ruin five years of [Rick's] life for a stupid mistake[.]" Id. McClafferty replied that Rick was only getting what he deserved. See id.

Pyle continued to walk away from the porch, but turned and said, "if I were you, Gregory, I would not be at that hearing tomorrow." Id. At that point, McClafferty's friend and landlord, Robert Beers, intervened, and ordered Pyle and his brother to leave the property. See id., at 33.

Beers testified he saw Pyle talking to McClafferty on his porch. See id., at 39. He knew why Pyle would be talking to McClafferty, and felt he needed to intervene because he knew McClafferty was scared of the Pyles. See id., at 40-41. After he told Pyle and his brother to leave, he heard Pyle say it would

be in McClafferty's best interest not to attend the preliminary hearing. See id., at 39-40. Beers then immediately informed police of the incident. See id., at 41.

Pyle contends the Commonwealth failed to prove he knowingly or intentionally intimidated McClafferty. Instead, he argues, he was merely trying to make things right with McClafferty and possibly offer him a pecuniary benefit in exchange for not testifying. He correctly observes that pecuniary inducement, by itself, is insufficient to establish intimidation. See Commonwealth v. Doughty, 126 A.3d 951, 957 (Pa. 2015).

However, even when a pecuniary benefit is offered, the circumstances surrounding the offer can establish intimidation. See id. ("It is equally true that an offer of benefit can be presented in such a Machiavellian manner as to contain an unarticulated act of intimidation.") McClafferty's testimony reveals circumstances rife with conduct conducive to intimidation. Pyle came to McClafferty's home on the day before the hearing. He forced his way inside. And he informed McClafferty that it would be in McClafferty's best interest to not testify. The jury was entitled to infer that Pyle at least knew his words and actions would have the effect of intimidating McClafferty. Pyle's only argument on appeal merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2018